UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| DANA M. BALLEW and CHARLES A. BALLEW, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HYUNDAI MOTOR AMERICA, INC. and HYUNDAI MOTOR COMPANY,<br><br>Defendants. | Case No. 7:18-cv-03014-DCC<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiffs Dana M. Ballew and Charles A. Ballew (collectively, "Plaintiffs"), by and through their attorneys, bring this action, both individually and on behalf of all others similarly situated, against Defendants Hyundai Motor America, Inc., and Hyundai Motor Company (collectively, "Defendants") and allege as follows:

**The Parties**

1. Plaintiffs Dana M. Ballew and Charles A. Ballew are South Carolina citizens and Spartanburg County residents. Plaintiffs are the co-owners of a 2015 Hyundai Sonata with Vehicle Identification Number 5NPE24AA5FH128566. Mrs. Ballew is the primary operator of this vehicle. She is employed as a realtor and is a notary public and volunteer Guardian *ad Litem*.

2. Defendant Hyundai Motor America ("HMA") is, at all relevant times, a foreign corporation with its principal place of business in California. HMA is a subsidiary of Defendant Hyundai Motor Company. HMA is and has been engaged in the business of designing,

manufacturing, distributing, marketing, and selling products to consumers in the state of South Carolina and throughout the United States, including the 2011 – 2015 Hyundai Sonata ("Subject Vehicles"). HMA regularly does business in South Carolina, and its products, including the Subject Vehicles, are regularly sold and used by consumers in South Carolina. It has, therefore, submitted itself to the jurisdiction of this Court.

3.     Defendant Hyundai Motor Company ("HMC") is a Korean corporation headquartered in Seoul, South Korea. HMC is the parent corporation of HMA.

4.     At all relevant times, Defendants supplied the capital and approvals necessary to design, manufacture, market, and sell the Subject Vehicles. Defendants also employed legal, compliance, and regulatory personnel to make decisions regarding the Subject Vehicles, regardless of whether HMA is deemed a brand, subsidiary, or division. These employees ultimately made or ratified the decisions that allowed the Subject Vehicles to be sold in breach of their warranties as more fully set forth below.

5.     Defendants are responsible for all representations and warranties regarding the Subject Vehicles.

## Jurisdiction and Venue

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332, which provides for federal jurisdiction in class actions with minimal diversity when damages exceed five million dollars, exclusive of interest and costs. The Court has supplemental subject matter jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

7.     Plaintiffs reside in this district and division. Additionally, Plaintiffs' purchase of a 2015 Hyundai Sonata and all attempts to obtain Defendants' warranty coverage have occurred from Defendants' authorized dealership, Dick Smith Hyundai, Inc. ("Dick Smith"), based in

Greenville, South Carolina. Venue is thus appropriate within the contemplation of 28 U.S.C. § 1391.

**Factual Background**

8. On or about July 10, 2015, Plaintiffs purchased a new 2015 Hyundai Sonata with Vehicle Identification Number 5NPE24AA5FH128566 from Dick Smith. Plaintiffs' purchase included HMA's 5-year/60,000-mile "New Vehicle Limited Warranty." To further protect the vehicle, Plaintiffs additionally entered into an "Extended Service Agreement" that extended the New Vehicle Limited Warranty by 12 months or 24,000 miles.

9. After purchasing the vehicle, Mrs. Ballew returned to Dick Smith on four occasions (September 2015, December 2015, March 2016, and June 2016) to have the oil changed and tires rotated on her vehicle.[1]

10. Due to the inconvenience of traveling approximately one-half hour in normal traffic to Dick Smith in Greenville for oil changes that were not a covered benefit, Mrs. Ballew's next four oil changes were completed by persons or businesses near their home in Spartanburg, South Carolina.[2] Additionally, each of these four oil changes occurred at or before the recommended mileage or time as stated in the "Normal Maintenance Schedule" within the owner's manual.

11. On August 31, 2017, after 45,016 miles, Mrs. Ballew returned to Dick Smith for an oil change, replacement air filters, and a brake switch replacement.

12. In late November/early December 2017, Mrs. Ballew again had the oil changed by Tony Craig in Spartanburg.

---

[1] The exact dates of service and miles driven at the time of service as shown in Plaintiffs' services records are as follows: September 8, 2015 – 3,899 miles; December 28, 2015 – 10,470 miles; March 25, 2016 – 15,260 miles; and June 4, 2016 – 20,062 miles.

[2] The persons or businesses completing these oil changes were Tony Craig, Fastway Oil Change located at 695 N. Pine Street, Spartanburg, and Wal-Mart in Spartanburg.

13. On March 27, 2018, after 54,736 miles, Mrs. Ballew returned to Dick Smith for an oil change. Employees at Dick Smith raised no issue of improper maintenance during that service.

14. On May 9, 2018, Mrs. Ballew returned to Dick Smith when her vehicle was periodically failing to engage the reverse gear, as well as lunging and hesitating while driving. At that time her vehicle had been driven 57,371 miles. After instructing Mrs. Ballew that this condition was normal for the Sonatas, Dick Smith employees investigated her vehicle and determined that the DCT gear actuator needed to be removed and replaced. The removal and replacement were covered under the original New Vehicle Limited Warranty, and once completed, the vehicle began operating as designed. Additionally, Dick Smith employees changed the oil in Mrs. Ballew's vehicle. Employees at Dick Smith raised no issue of improper maintenance and did not refuse warranty coverage for any such reason.

15. Less than two months later, on July 2, 2018, and after 59,646 miles, Mrs. Ballew again returned to Dick Smith complaining that her vehicle was not shifting into reverse properly and was shaking and jerking as if not changing gears properly. Ms. Ballew also noted that the check engine light had been activated but was off at the time of the service visit.

16. Following investigation, a transmission replacement was recommended. Like the DCT gear actuator, the transmission replacement was covered and completed under the original New Vehicle Limited Warranty. Employees at Dick Smith raised no issue of improper maintenance and did not refuse warranty coverage for any such reason.

17. During the subsequent test drive, the Dick Smith technician noted knocking in the engine and the presence of sludge when the engine oil filler cap was removed. Based upon this finding it was determined that an engine replacement was required in order to repair Plaintiffs' vehicle.

18. Although Plaintiffs' vehicle was within the 5-year/60,000-mile New Vehicle Limited Warranty, and all earlier attempts to fix Plaintiffs' vehicle were covered under the warranty, Defendants declined to replace the engine under warranty. *See* Exhibit 1, Dick Smith Hyundai, Ballew Maintenance Record July 2, 2018 (2018). The pretext for denial of the warranty repair was "sludge build up and lack of maintenance." *Id.* Since driving the vehicle from Dick Smith to their home following the engine repair denial on July 2, 2018, Plaintiffs have not driven the vehicle.

19. On August 2, 2018, pursuant to the Alternative Dispute Resolution program defined within the New Vehicle Limited Warranty, Plaintiffs filed a Customer Complaint with the Better Business Bureau Auto Line ("BBB Auto Line").

20. On August 8, 2018, Plaintiffs received email communication from Manny Roque, the case specialist handling their BBB Auto Line Claim. Mr. Roque's email confirmed Plaintiffs' eligibility for the Alternative Dispute Resolution program and explained that the claim would be handled in two phases: Mediation Phase and Arbitration Phase. The Mediation Phase consisted of BBB Auto Line sending Plaintiffs' complaint to HMA,[3] which would have an opportunity to make a settlement offer that Plaintiffs could accept or reject. If Plaintiffs rejected HMA's offer, the case would continue to the Arbitration Phase wherein Plaintiffs and HMA would present their respective positions to a neutral arbitrator who would make a coverage decision.

21. The mediation phase proved to be futile. Shortly after the August 8, 2018 communication from BBB Auto Line, Plaintiffs received the BBB Auto Line "Manufacturer Response Form" informing them that HMA was unwilling to make an offer of settlement and that

---

[3] Plaintiffs' New Vehicle Limited Warranty provides that HMA is the Warrantor and "warrants your new 2015 Hyundai vehicle pursuant to the limited warranties described in this Owner's Handbook." *See* Exhibit 4, 2015 Owner's Handbook & Warranty Information 17. Additionally, "HMA reserves the right to furnish the final decision in all warranty matters." *See id.* at 18.

the engine repair request was denied due to lack of maintenance. *See* Exhibit 2, BBB Auto Line, Manufacturer Response Form 1 (2018). As there was no offer of settlement, Plaintiffs did not accept and elected to proceed with a hearing to address their complaint.

22. On August 31, 2018, Plaintiffs received a "Notice of Hearing/Inspection" letter from BBB Auto Line informing them that arbitration was scheduled for September 13, 2018, in Greenville. In addition, the Notice provided that HMA would be attending via telephone.

23. On September 13, 2018, Mrs. Ballew attended the scheduled arbitration hearing and presented her complaint.

24. At the arbitration hearing, HMA stated that the lack of maintenance receipts for all prior services should result in a denial of the engine warranty repair. *See* Exhibit 3, BBB Auto Line, Denial Decision 3 (2018). ("The Manufacturer . . . repeatedly stated the engine repair would be covered under the Warranty if she could provide receipts.")

25. Two days later, on September 15, 2018, Arbitrator Richard M. Kahn submitted his decision to deny Plaintiffs' request for repair stating, "Consumer's failure to provide proof required to establish that routine maintenance (oil changes) were accomplished in accordance with the owner's manual voided warranty coverage for the engine." *See Id*.

26. The denial of the complaint to the BBB Auto Line is non-binding on Plaintiffs.

### A.    **Defendants' New Vehicle Limited Warranty**

27. Defendants issued a New Vehicle Limited Warranty with each Subject Vehicle.

28. The New Vehicle Limited Warranty is limited to 5 years from the date of first use or 60,000 miles, whichever occurs first.

29. According to the 2015 Owner's Handbook & Warranty Information, the New Vehicle Limited Warranty provides for repair or replacement of any components originally

6

manufactured or installed by Defendants that are found defective under normal use and maintenance, except items specifically referred to in the section "What is Not Covered." *See* Exhibit 4, Hyundai, 2015 Owner's Handbook & Warranty Information 18 (2015). Engines or engine related parts are not included in the "What is Not Covered" section. These parts are therefore covered by the New Vehicle Limited Warranty. *Id.* at 20.

30. The warranty expressly absolves owners from a mandatory requirement to retain maintenance receipts or to demonstrate that routine maintenance was conducted solely through the presentation of receipts. *Id.* ("It *may* be necessary for you to show *that the required maintenance has been performed*, as specified in the Owner's Manual.") (emphasis added). In fact, because "normal maintenance" is not covered "unless such services are performed as part of a covered warrantable repair," *id.*, owners such as Plaintiffs may choose to have routine maintenance conducted by servicers that are more convenient in location and more attractive in pricing.

31. Plaintiffs obtained all required oil maintenance services from Dick Smith or other entities and individuals, as permitted by Defendants' New Vehicle Limited Warranty.

32. The final oil maintenance service, prior to the manifestation of the defect, occurred at Dick Smith. Employees at Dick Smith raised no issue of improper maintenance during that service, nor did Dick Smith employees raise issues of improper maintenance for prior warranty services.

### B. Defective Engine Components within Subject Vehicles

33. Defendants manufacture and sell—through its authorized dealers (*e.g.,* Dick Smith)—all Subject Vehicles.

34. Each Subject Vehicle is equipped with a 1.6-liter turbo Gasoline Direct Injection (GDI) 4-cylinder engine.

7

35. Upon information and belief, under normal use and with proper maintenance, the engines in Subject Vehicles suffer from inadequate engine oil lubrication, which causes the engines and their subject components to wear prematurely and ultimately cause catastrophic engine failure.

36. The connecting rod bearings within Subject Vehicles additionally suffer from failure caused by metal debris circulating within the engine via the engine oil. The oil contamination and inadequate engine lubrication cause the connecting rod bearings to break and release even more metal debris into the engine oil. Consequently, contaminated oil begins to recirculate throughout the engine, causing further engine damage and eventual catastrophic engine failure.

37. Additionally, as was the case in Plaintiffs' vehicle, the Subject Vehicles may start to produce a "knocking" sound in the engine as contaminated oil begins recirculating within the engine.

## Class Action Allegations

38. Under Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of themselves and the class, initially defined as:

> All persons or entities in South Carolina who are current or former owners and/or lessees of a 2011 – 2015 Hyundai Sonata with a 1.6-liter turbo Gasoline Direct Injection (GDI) 4-cylinder engine.

39. Excluded from the class are:

   A. Defendants and any entity in which Defendants have a controlling interest, and their legal representatives, employees, officers, directors, assigns, and successors;

   B. The judge, magistrate, and any special master to whom this case is assigned, and any member of their immediate families;

      C.      Any South Carolina residents who have received full monetary reimbursement from Hyundai for a prior repair under warranty or who have had their class vehicle repaired by Hyundai under the warranty; and

      D.      To the extent the class certification order permits exclusion, all persons who timely submit proper requests for exclusion from the plaintiff class.

40.     Upon information and belief, the Class is so numerous that individual joinder of all members is impracticable pursuant to Fed. R. Civ. P. 23(a)(1). The disposition of claims in a single class action will provide substantial benefits to all parties and to the Court, including the just, speedy, and inexpensive determination of this matter. Moreover, although the exact number and identities of members of the Class are unknown at this time, such information is readily identifiable through records and transaction data kept by Defendants and/or a third party vendor, such as IHS (formerly R.L. Polk).

41.     Plaintiffs' claims are both typical and aligned with the proposed class claims. The damages sustained by Plaintiffs are also typical of those sustained by class members. The factual and legal bases of the claims are common to all plaintiff class members and represent a common injury. *See* Fed. R. Civ. P. 23(a)(2).

42.     There are many common questions of law and fact. These common issues include, but are not limited to, whether:

      A.      Subject Vehicles were sold with a defect;

      B.      Defendants failed to provide warranty repairs as required by their New Vehicle Limited Warranty and/or Extended Warranty; and

      C.      South Carolina law applies to the claims of the putative class, except where authorized by the Magnuson-Moss Warranty Act.

These common questions of law and fact predominate over individual questions, and a class action is the superior means to litigate the claims. *See* Fed. R. Civ. P. 23(b)(2).

43. There is a well-defined community of interest in the questions of law and fact involved in this matter such that a class action is clearly the superior method for the fair and efficient handling of this dispute. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of potentially thousands of owners of Subject Vehicles is impracticable. The damages suffered by individual class members are relatively small on an individual basis, making the acquisition of counsel to represent a class member on an individual basis cost prohibitive, especially when taking into consideration the sophisticated Defendants in this case. The expense and burden of litigation would make it difficult, if not impossible under these circumstances, for the members of the class to individually redress the wrongs done to them by Defendants. However, because of the commonality of the predominant issues involved in the class claims, defenses, and damages alleged, there will be no difficulty in maintaining this dispute as a class action.

44. Plaintiffs will fairly and adequately represent and protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). The named Plaintiffs identified in this complaint own a 2015 Hyundai Sonata with a 1.6-liter turbo Gasoline Direct Injection (GDI) 4-cylinder engine and are thus typical of the class members as required by Fed. R. Civ. P. 23(a)(3). Plaintiffs have retained competent counsel with experience in class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests that are contrary to or adverse to those of the class that Plaintiffs seek to represent.

45. Certification is also appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendants acted or refused to act on grounds that apply generally to the class, thus warranting injunctive or

declaratory relief. Defendants should be required to implement an appropriate, concrete, and timely warranty protocol for its defective engines.

46. Alternatively, should the Court find that Plaintiffs cannot meet the requirements of Fed. R. Civ. P. 23(b)(2) or 23(b)(3), the Court should certify liability issues that are susceptible to class-wide proof.

47. The precise liability issues Plaintiffs would seek to alternatively certify will be set forth more fully in their forthcoming motion for class certification; however, those predominant liability issues will necessarily relate to whether Defendants have an obligation to honor and comply with their warranties and whether Defendants' failure to do so is a breach of warranty with its customers.

**FOR A FIRST CAUSE OF ACTION**
**Breach of Express Warranty**

48. Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein verbatim.

49. At all times, Defendants are and have been engaged in the business of designing, manufacturing, distributing, marketing, and selling the Subject Vehicles throughout South Carolina.

50. At all times, Defendants are and have been merchants and sellers of the Subject Vehicles.

51. Defendants expressly warranted to Plaintiffs and members of the class that the Subject Vehicles were merchantable and fit for their ordinary, particular, and intended use and purpose.

52. Defendants also provided the New Vehicle Limited Warranty to Plaintiffs and members of the class, thereby expressly warranting that the defective engines in the Subject

11

Vehicles would be repaired and expressly warranting that those customers would have no costs for such repairs.

53. Defendants breached their express warranties. The Subject Vehicles sold by Defendants to Plaintiffs and members of the class were not in merchantable condition, were not fit for the ordinary purpose for which cars are used, and/or were not of the same quality as those generally acceptable in the trade. In fact, the Subject Vehicles were defective from the point of manufacture and sale, thus rendering the product unmerchantable at the time of purchase.

54. Defendants have breached express warranties, including their New Vehicle Limited Warranty, by failing to adequately provide coverage and to repair or correct the engine defect, leaving thousands of customers without a remedy.

55. The New Vehicle Limited Warranty provided to Plaintiffs and all members of the class provides that the "New Vehicle Limited [Warranty] . . . appl[ies] to the vehicle regardless of a change in ownership, and [is] transferable to subsequent owners." *See* Exhibit 4, Hyundai, 2015 Owner's Handbook & Warranty Information 18 (2015).

56. Plaintiffs and class members are the intended beneficiaries of Defendants' warranties. The dealers (*e.g.*, Dick Smith Hyundai) were not intended to be the ultimate consumers of the Subject Vehicles and have no rights under the warranty agreements provided with the Subject Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

57. Plaintiffs took reasonable steps to notify Defendants of the breach within a reasonable time by filing a claim with BBB Auto Line on August 2, 2018, one month after the engine repair warranty service was denied. Defendants also knew of the defect and have chosen to conceal it and to fail to comply with their warranty obligations.

58. Plaintiffs complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of the Defendants' conduct described herein.

59. As a direct and proximate result of Defendants' breach, Plaintiffs and the members of the class have suffered harm and monetary loss.

### FOR A SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

60. Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein verbatim

61. Defendants are and were at all relevant times merchants with respect to motor vehicles.

62. At all relevant times, Defendants and their authorized agents were in the business of leasing and selling vehicles and/or by course of business held themselves out as having special knowledge or skill regarding these vehicles.

63. A warranty that Subject Vehicles were in merchantable condition was implied by law.

64. The Subject Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used and/or were not of the same quality as those generally acceptable in the trade. In fact, the Subject Vehicles, including the 2015 Hyundai Sonata, were defective from the point of manufacture and sale, thus rendering the product unmerchantable at the time of purchase. Specifically, the Subject Vehicles were designed, manufactured, distributed, and sold with engines containing defective connecting rod bearings and insufficient engine oil lubrication systems that cause Subject Vehicles to experience premature and catastrophic engine failure.

65. Plaintiffs took reasonable steps to notify Defendants of the breach within a reasonable time by filing a claim with BBB Auto Line on August 2, 2018, one month after the engine repair warranty service was denied. Defendants also knew of the defect and have chosen to conceal it and to fail to comply with their warranty obligations.

66. Plaintiffs complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of the Defendants' conduct described herein.

67. As a direct and proximate result of Defendants' breach, Plaintiffs and the members of the class have suffered harm and monetary loss.

### FOR A THIRD CAUSE OF ACTION
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301 *et seq.*

68. Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein verbatim.

69. This Court has jurisdiction to decide claims brought under 15 U.S.C. §§ 2301, *et seq.*, by virtue of 28 U.S.C. § 1332(a)-(d).

70. Plaintiffs are "consumer(s)" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

71. Defendants are "supplier(s)" and "warrantor(s)" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (4)-(5).

72. The Subject Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

73. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

74. Defendants' express warranties, including its New Vehicle Limited Warranty and Extended Warranty, are warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Subject Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

75. Defendants breached its New Vehicle Limited Warranty and Extended Warranty by failing to repair the Subject Vehicles' defective engines, by providing Subject Vehicles not in merchantable condition and not fit for the ordinary purpose for which vehicles are used, and by failing to cure defects and nonconformities once they were identified.

76. The New Vehicle Limited Warranty provided to Plaintiffs and all members of the class provides that the "New Vehicle Limited [Warranty] . . . appl[ies] to the vehicle regardless of a change in ownership, and [is] transferable to subsequent owners." *See* Exhibit 4, Hyundai, 2015 Owner's Handbook & Warranty Information 18 (2015).

77. Plaintiffs and class members are the intended beneficiaries of Defendants' warranties. The dealers were not intended to be the ultimate consumers of the Subject Vehicles and have no rights under the warranty agreements provided with the Subject Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

78. Plaintiffs fully satisfied any obligations under 15 U.S.C. § 2310(a)(3) and also provided Defendants with opportunities to cure, even though no such opportunity is required in these circumstances. Upon information and belief, Defendants were also on notice of the alleged defect from the complaints and service requests made by class members, as well as from its own warranty claims, lawsuits, customer complaint data, and/or parts sales data.

79. Even so, requiring an informal dispute settlement procedure, or affording Defendants a reasonable opportunity to cure their breach of written warranties would be

unnecessary and futile. At the time of sale or lease of each Subject Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Subject Vehicles' inability to perform as warranted. Defendants, nonetheless, failed to rectify the situation or implement an adequate remedy.

80.     The amount in controversy of Plaintiffs' individual claim meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

81.     As a direct and proximate result of Defendants' breach of the written warranties, Plaintiffs and other class members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and other class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees, and/or other relief as deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray that this Court enter judgment against Defendants and in favor of Plaintiffs and the class and award the following relief:

A.     Certification of the proposed class under Fed. R. Civ. P. 23;

B.     Appointment of Plaintiffs Dana M. Ballew and Charles A. Ballew as class representatives;

C.     Appointment of the undersigned attorneys as class counsel;

D.     Finding that the Defendants' conduct constitutes breach of express and/or implied warranty;

E. Finding that the Defendants' conduct constitutes a violation of the Magnuson-Moss Warranty Act;

F. An award of injunctive relief and/or declaratory relief, including, without limitation, an order that requires Defendants to repair and/or replace the defective engines found in Subject Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and class members with appropriate curative notice regarding the existence of the defect;

G. An award of actual, general, specific, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and class members are entitled;

H. An award of attorneys' fees; and

I. Such other and further judicial determinations and relief as may be appropriate in this proceeding.

PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

[*Signature Page to Follow*]

November 7, 2018

Respectfully submitted,

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, L.L.C.

/s/ *T. Christopher Tuck*
T. Christopher Tuck, ID No.: 9135
E-mail:  ctuck@rpwb.com
Robert S. Wood, ID No.: 7965
E-mail: bwood@rpwb.com
T.A.C. Hargrove, II, ID No.: 12487
E-mail: thargrove@rpwb.com
1037 Chuck Dawley Blvd.
Building A
Mt. Pleasant, SC  29464
843.727.6500

ATTORNEYS FOR PLAINTIFFS

18